UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KNOWLEDGEAZ, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 1:05-cv-1019-DFH-TAB |
| JIM WALTER RESOURCES, INC., GUY | ) | |
| HENSLEY, JAMES BEASLEY, DENNIS | ) | |
| SEIPEL, DANIEL MADDOX, NICKELLIE, | ) | |
| LLC and ACTION AUTHORITY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON MOTION TO DISMISS AND RELATED MATTERS

Plaintiff KnowledgeAZ, Inc. ("KAZ") has sued a former customer, its agents, as well as several of its own former employees and their new businesses on a variety of claims, including copyright infringement and inducement to infringe, breach of contract, breach of fiduciary duty, tortious interference with contract relationships, conversion, civil conspiracy, and fraud.

Defendants Jim Walter Resources, Inc. ("JWR") and Guy Hensley have moved to dismiss the claims against them for lack of personal jurisdiction. They have also moved for dismissal of the claims against James Beasley because he has died and KAZ has not made any effort to substitute his estate as a defendant. For the reasons explained below, the motion to dismiss is denied as to both JWR and Hensley. KAZ's claims against Beasley are dismissed. Defendants' motion to

strike Nigam Arora's affidavits is granted in part and denied in part. KAZ's motion to strike and for sanctions is denied in its entirety.

## The Parties and the Claims

Plaintiff KAZ is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Cplt. ¶ 1. Defendant JWR is an Alabama corporation with its principal place of business in Brookwood, Alabama. Sergent Aff. ¶¶ 7, 8. JWR is a wholly owned subsidiary of Walter Industries, Inc., a Delaware corporation with its corporate offices in Florida. Rice Aff. ¶ 3. Defendant Guy Hensley is in-house counsel for JWR and an Alabama resident. Hensley Aff. ¶¶ 2, 6. Defendant James Beasley was an employee of JWR until his death on August 28, 2005. Sergent Aff. ¶ 20.

KAZ is in the business of developing and licensing computer software and providing customization and support services. Arora Aff. ¶ 4. JWR operates three underground coal mines in Alabama and is a major producer of coal used in the steelmaking and electrical utility industries. Sergent Aff. ¶ 9. KAZ President Nigam Arora testified that, beginning in 1998, JWR and other subsidiaries of Walter Industries solicited KAZ to develop custom software for them. Arora Aff. ¶ 13. In January 2001, KAZ and JWR entered into a perpetual license agreement for JWR to use KAZ's "eWAREHOUSE A-Z" software to manage inventory in several of its Alabama warehouses. Sergent Aff. ¶ 5, Ex. B.

In August 2002, KAZ and JWR entered into a system support/upgrade agreement for KAZ to provide follow-on support and services in relation to JWR's use of the e-WAREHOUSE software.  See Pl. Ex. N.  Arora testified that JWR entered into two subsequent agreements for KAZ to design, program, integrate, and test additional software enhancements and a new software module.  Arora Aff. ¶¶ 65-66.[1]

In December 2004, JWR filed an action against KAZ and Arora in Alabama state court, claiming that it was entitled to the source code of the e-WAREHOUSE software based on a provision in the license agreement providing for such in the event that KAZ became insolvent.  See Pl. Ex. F.  The case was removed to federal court, and KAZ and Arora moved to dismiss on the basis of improper venue or, alternatively, to transfer the case here under 28 U.S.C. § 1404.  See Pl. Ex. U.  On May 12, 2006, the United States District Court for the Northern District of Alabama remanded the action to the state court for lack of subject matter jurisdiction.  See Def. Rep. Ex. C.

KAZ brought this suit in July 2005 and filed its amended complaint on August 25, 2005.  KAZ alleges that JWR and its employees violated the license agreement by, among other things, making and retaining unauthorized copies of

---

[1]JWR has moved to strike this testimony on grounds that it contains unsubstantiated facts and/or impermissible speculation and conjecture.  The basis for this objection is not obvious.  JWR has not denied the existence of these two agreements, and in any event, at this stage the court must give KAZ the benefit of the factual conflict.

its eWarehouse software.  KAZ alleges that JWR's actions were facilitated by three of its own employees who left employment with KAZ, created new business entities in Indiana, and entered into unlawful side deals with JWR for additional software support and customization work.

I.    *Motions to Strike and for Sanctions*

Both sides have filed motions to strike affidavits or portions of affidavits submitted by the opposing side.

A.    *JWR and Hensley's Motion to Strike*

JWR and Hensley move to strike several paragraphs of Arora's affidavit, arguing that his statements are not based on personal knowledge, contain impermissible legal conclusions or argument, or constitute hearsay.  In response to these criticisms, Arora has filed a second affidavit.  JWR and Hensley move to strike several paragraphs of that affidavit as well.

"A plaintiff opposing a motion to dismiss for lack of personal jurisdiction must present 'evidence of specific facts that, when taken as true, are sufficient to support a finding of personal jurisdiction.'" *Blubaugh v. American Contract Bridge League*, 2002 WL 31040339, *2 (S.D. Ind. July 31, 2002), quoting *Andersen v. Sportmart, Inc.*, 57 F. Supp. 2d 651, 654 (N.D. Ind. 1999).  See also *Employee Benefit Managers, Inc. v. A Medex Transition Admin. Co.*, 2006 WL 1128646, *4 n.3

(N.D. Ind. Apr. 24, 2006) (striking portions of affidavit that were "legal conclusions, unsupported by specific facts and lacking a basis in personal knowledge" offered to oppose motion to dismiss for lack of personal jurisdiction); *Search Force, Inc. v. Dataforce International, Inc.*, 112 F. Supp. 2d 771, 774 n.7 (S.D. Ind. 2000) (considering as evidence offered to oppose motion to dismiss for lack of personal jurisdiction only those statements in affidavit by senior corporate officer that were "factual assertions and not merely vague generalizations or unsupported allegations"), citing *Cushing v. City of Chicago*, 3 F.3d 1156, 1161 n.5 (7th Cir. 1993).

After reviewing the statements in dispute and the arguments of both sides, the court concludes that some, but not all, of the challenged testimony must be stricken, along with the corresponding portions of KAZ's response brief.  First, JWR objects to Arora's testimony about the specific (yet "estimated") numbers of telephone calls, faxes, and interactive computer sessions between KAZ and JWR, and hours of work spent by KAZ on JWR projects, in 2001 and 2002.  See Arora Aff. ¶¶ 35, 38-40, 43, 49, 53-55.  Arora's position as a hands-on president of such a small company provides sufficient foundation for these aspects of his testimony. See, *e.g.*, *China Industries (USA), Inc. v. New Holland Tire, Inc.*, 2006 WL 2290975, *2 (N.D. Ill. Aug. 7, 2006) (denying motion to strike testimony about company's sales by company's general manager and person also in industry who would have had access to this information).  As the president of a closely-held corporation, Arora testified that he had direct involvement allocating resources and reviewing

time records, budgets, and project plans at KAZ, and that these experiences provide a basis for his testimony.  See Arora Second Aff. ¶¶ 18-20.

The same cannot be said with respect to Arora's testimony about phone calls exchanged between JWR and the Indiana business entities started by former KAZ employees, or invoices exchanged between the Indiana businesses.  See Arora Aff. ¶¶ 92, 94, 97, 99, 102, 104.  JWR also challenges Arora's testimony about the number of alleged interactive computer sessions between JWR and the other Indiana businesses.  See Arora Aff.  ¶¶ 91, 96, 101.  Finally, JWR challenges Arora's testimony concerning the number of telephone calls exchanged between JWR and former KAZ employee Daniel Maddox's home or personal cellular telephone.  See Arora Aff. ¶¶ 47, 57.

All of this testimony must be stricken.  Arora testified generally that his knowledge derives from the "over 5,000 hours" of time he has spent preparing for this litigation, and his review of "over 3,000 pages" of documents before executing his affidavit.  He claims that his testimony about phone calls is also taken from phone bills, but he has not submitted these records into evidence.  None of these bases is adequate to support a finding that Arora's testimony is based on first-hand personal knowledge, as required by Federal Rule of Evidence 602.  Arora could easily have offered the documents he purports to rely on in his affidavit.  His conclusion in his supplementary affidavit that "there is a solid foundation of

evidence behind each statement" adds nothing as a basis for his testimony and is also stricken.  See Arora Second Aff. ¶ 17.

Second, JWR's motion to strike ¶¶ 26, 29, 33, 63 is denied as to the testimony relating to Arora's understanding of the factual details surrounding execution of the license agreement, but granted as to his interpretation of the legal obligations created by that agreement.  JWR's motion to strike ¶ 59 (first sentence) is granted because Arora has not shown that he has first-hand knowledge of JWR's execution of the support agreement, independent of the document.

Third, JWR objects to Arora's testimony that independent Indiana businesses were created by existing or former KAZ employees, citing print-outs from the Indiana Secretary of State's website.  See Arora Aff. ¶¶ 11, 64.  The court is satisfied that Arora has sufficient personal knowledge to testify on that issue, though the documents must speak for themselves.

Fourth, JWR objects to much of Arora's testimony about the events at the heart of this dispute, that is, the alleged interactions between JWR employees and NickEllie, LLC, the company formed by Maddox after leaving KAZ.  See Arora Aff. ¶¶ 70-73, 75, 78, 80-82, 85-88, 105.  The court will not consider the legal arguments contained within these statements (see, *e.g.*, ¶ 78 – testifying that Maddox/NickEllie, LLC "engaged in dozens of separate incidents of KAZ copyright violations" and ¶ 87 – "JWR, Hensley, Maddox and NickEllie entered into business

arrangements"), but Arora has testified that his knowledge of the events themselves derives from discussions with Maddox and others who are defendants in this action. The testimony is admissible against Maddox as statements by a party opponent. See Fed. R. Evid. 801(d)(2)(A). Also, at least at this preliminary stage, the testimony appears to be admissible against Hensley as statements made by an agent or co-conspirator, see Fed. R. Evid. 801(d)(D) & (E), and the court assumes that his testimony has been offered with awareness of the requirements of Rule 11. Paragraph 105 must be stricken as impermissible speculation on the part of Arora about the JWR and NickEllie agreement.

Also, Arora's testimony about the relationship between the JWR and Walter Industries businesses, citing website print-outs attached to his affidavit, is outside the scope of his personal knowledge and includes impermissible legal conclusions. See Arora Aff. ¶¶ 6-9, 106-17. Arora claims that this testimony is based on his dealings with both companies since 1998, including his interactions with Walter Industries personnel, his review of Walter Industries press releases and SEC filings, and his attendance at various Walter Industries conferences and shareholder meetings. He also relies more generally on his acquired expertise in business matters. See Arora Second Aff. ¶¶ 5-6, 23, 25-30. None of these experiences entitles Arora to testify to legal conclusions about the relationships between JWR and Walter Industries or to engage in speculation about the meaning of the website documents. This testimony must be stricken. JWR has not questioned the authenticity or accuracy of the attached documents, however,

and there is sufficient evidence of authenticity for them to be considered independent of Arora's characterizations.

B.    *KAZ's Motion to Strike and Motion for Sanctions*

KAZ moves to strike completely the affidavits of Hensley and Rick Sergent, JWR's General Manager of Purchasing and Materials Control, claiming that they contain false testimony.  KAZ also requests that the court sanction JWR and Hensley by striking their motion to dismiss in its entirety and by awarding attorney fees and expenses to KAZ.  KAZ's arguments in support its own motions to strike and for sanctions demonstrate a misunderstanding as to what can reasonably be considered intentional misrepresentation or false testimony in an affidavit.

KAZ argues that Hensley's and Sergent's false statements demonstrate a "pattern of misconduct" by the defendants that requires the court to impose sanctions pursuant to Rule 11 or the court's inherent power.  Rule 11 requires attorney submissions before the court to be based on a reasonable belief that the allegations or factual contentions contained therein are supported by evidence. Sanctions for violations of Rule 11 are to be imposed sparingly.  *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003).  Similarly, the court's inherent powers to impose sanctions for "bad faith" conduct must be exercised with caution and restraint.  *Schmude v. Sheahan*, 420 F.3d 645, 650 (7th Cir. 2005).

KAZ's motion for sanctions under Rule 11 fails first because KAZ has not complied with the Rule's mandatory "warning shot" provision.  That provision requires a party to wait 21 days after serving a motion for sanctions on the opposing party before it may file that motion with the court.  See Fed. R. Civ. P. 11(c)(1)(A).  KAZ never met this requirement.  Although KAZ first challenged Hensley's and Sergent's affidavits in its response brief to the motion to dismiss, it did not file a motion, separate from other motions or requests, as required by Rule 11.  KAZ's failure to satisfy the plain requirements of Rule 11 is fatal to its motion for sanctions.  See, *e.g.*, *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003) (Rule 11 sanctions on motion of party require at least substantial compliance with warning notice requirement); *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1058 (7th Cir. 1998) (sanctions under Rule 11 would be improper where rule's procedural requirements have not been followed); *Srivastava v. Marion County Election Board*, 2004 WL 2278744, *1 (S.D. Ind. Sept. 30, 2004) (denying Rule 11 sanctions where warning notice was not given).

Also, KAZ has not demonstrated that the defendants' conduct in this case comes even close to being sanctionable.  KAZ first argues that Hensley testified falsely that former JWR employees Daniel Maddox and Dennis Seipel, both defendants in this case, were parties to the pending lawsuit in Alabama.  See Hensley Aff. ¶ 3.  KAZ speculates that JWR included this statement to bolster its argument that the court should dismiss this action in favor of allowing the Alabama action to proceed.

JWR acknowledged this error in its reply, claiming that Hensley simply misidentified the defendants in the Alabama action by mistakenly naming the parties listed in the caption of the initial draft of the summons he filed with the Alabama court in December 2004.  See Response in Opposition to Motion for Sanctions, Ex. A.  The court finds this explanation reasonable.  Hensley attached a copy of the actual complaint to his affidavit, which showed that Maddox and Seipel were not defendants.  If Hensley had actually had been trying to mislead the court, it seems unlikely that he would have attached the proof that conflicts with the statement in question.

KAZ also claims that Hensley misrepresented the date on which Arora was served with a copy of the complaint in the Alabama action.  In his affidavit, Hensley stated that he was attaching what appeared to be a return receipt for service, and JWR argued that the receipt showed that Arora received service by registered mail on January 11, 2005.  Hensley Aff. ¶ 4.  In fact, the receipt shows a date of January 11, 2003.  JWR now claims that it submitted the receipt by mistake and that it relates to service of another letter on Arora.  Hensley also testified that a summons for the Alabama complaint was delivered to Arora on June 9, 2005.  Hensley Aff. ¶ 5 (attaching an affidavit by Ken York stating that service was made on June 10, 2005).  Arora claims that he was not served until February 24, 2006.  See Arora Aff. ¶ 83.

In its reply, JWR acknowledged its misidentification and misreading of the handwritten January 2003 receipt.  It still maintains that Arora was served in June 2005, and Arora's disagreement about this issue does not establish that Hensley is lying.  The parties' dispute over this fact must be resolved through the litigation process rather than by striking defendants' evidence.

Third, KAZ contends that Hensley has misrepresented the extent of his involvement in the events underlying the parties' dispute.  Hensley testified that he was not employed by JWR when the January 2002 licensing agreement was negotiated or executed, and that he took no part in the negotiation, execution, or performance of that agreement.  He testified that his relationship with the agreement was limited to investigating KAZ's alleged breach and to preparing and pursuing the Alabama litigation on behalf of JWR.  Hensley Aff. ¶¶ 8-10.  KAZ argues that a January 2003 e-mail demonstrates that in fact Hensley has been involved in negotiations with Maddox and NickEllie.  See Pl. Ex. J at JWR0009.

The evidence cited by KAZ does not compel a finding that Hensley is even wrong about the extent of his involvement with the license agreement, let alone that he deliberately tried to mislead the court.  The e-mail relayed information from one JWR employee to three others about a quote received from Maddox to support JWR's system for one year.  Hensley was only one of three recipients of the e-mail.  At this point, there is no evidence that he even responded.  Also, the e-mail appears to concern negotiations between JWR and NickEllie, and therefore

it would not directly contradict Hensley's testimony about involvement with the license agreement with KAZ.  Again, the significance of the e-mail and the proper characterization of Hensley's involvement are issues better left to be resolved at trial.

Finally, KAZ objects to the following statement from Sergent's affidavit: "With respect to Indiana manufacturers, apart from a handful of irregular purchases made since 1999, JWR's records indicate that JWR – at most – makes periodic purchases of electric motors from a company named Mohler Technology . . . ."  Sergent Aff. ¶ 13.  KAZ argues that Sergent's testimony misrepresents the quantity of JWR's purchases from Indiana businesses.  It points out that JWR has had business dealings with at least nine Indiana companies since 1999, including 95 transactions with Mohler that resulted in purchases totaling approximately $1.78 million.

JWR produced all of this specific information to KAZ.  Sergent's testimony was not a misrepresentation of fact but a characterization of the facts, and an accurate one at that.  The record indicates that JWR's purchases from Indiana businesses amounted to less than one percent of its purchases of goods and services over the time period covered.  See Sergent Supp. Aff. ¶¶ 5-7.

All of the statements labeled by KAZ as "false testimony" amount to either acknowledged mistakes about minor issues or characterizations of facts with

which KAZ disagrees.  The court will disregard the admittedly mistaken testimony, of course, but the circumstances here do not warrant striking entire affidavits or any other sanctions.  Cf. *Curtis Mgmt. Group, Inc. v. Academy of Motion Picture Arts and Sciences*, 717 F. Supp. 1362, 1372-73 (S.D. Ind. 1989) (striking defendant's motion to dismiss where two previous affidavits directly contradicted subsequently discovered evidence and court concluded affidavits were frivolous or filed to conceal the nature of the defendant's activities).

II.     *Motion to Dismiss*

    A.     *JWR and Hensley*

Having resolved the preliminary matters, the court now turns to the motion to dismiss.  Defendants JWR and Hensley have moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Under such circumstances, plaintiff KAZ bears the burden of demonstrating the existence of jurisdiction.  See *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  Without an evidentiary hearing on this issue, KAZ need only make a prima facie showing that the defendants are subject to personal jurisdiction here, and KAZ is entitled to the benefits of any conflicts in evidentiary submissions.  See *id.* at 782-83.

Federal jurisdiction over this action is based on claims of copyright infringement, for diversity of citizenship is not complete.  The Copyright Act does

not provide for nationwide service of process, so personal jurisdiction is governed by the law of the forum state, Indiana.  See Fed. R. Civ. P. 4(k)(1)(A); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997).

In Indiana, personal jurisdiction depends on whether the requirements of the state long-arm statute are met and whether federal due process is satisfied. *Purdue Research*, 338 F.3d at 779; *Brockman v. Kravic*, 779 N.E.2d 1250, 1255 (Ind. App. 2002).  Indiana Trial Rule 4.4(A) serves as Indiana's long-arm statute. The current version of the Rule lists eight enumerated bases for jurisdiction and includes the following language:  "In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  Thus, a plaintiff need only show that long-arm jurisdiction is constitutional.  The parties have not argued that there is any difference between the federal and state constitutional standards, so the court applies federal due process standards.  See, *e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-73 (1985).[2]

---

[2]A panel of the Indiana Court of Appeals has suggested that Rule 4.4(A) still requires courts to determine first whether the defendant's actions satisfy one of the enumerated acts and only then to conduct the due process inquiry.  See *Pozzo Truck Center, Inc. v. Crown Beds, Inc.*, 816 N.E.2d 966, 969 n.2 (Ind. App. 2004). This court disagrees with that view, and believes that the addition of the constitutional limits language in 2003 requires courts to perform only the constitutional analysis when jurisdiction is contested.  First, the *Pozzo Truck* reasoning effectively deprives the 2003 amendment of any effect and ignores the introductory phrase "In addition" for the extension of long-arm jurisdiction to constitutional limits.  Second, the *Pozzo Truck* explanation for the retention of the eight enumerated grounds is not compelling.  By retaining the enumerated grounds in Trial Rule 4.4, the Indiana Supreme Court ensured that the text of the

(continued...)

Due process requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940).  Personal jurisdiction under Indiana Trial Rule 4.4(A) may be either general or specific.  See *Alpha Tau Omega Fraternity v. Pure Country, Inc.*, 185 F. Supp. 2d 951, 956 (S.D. Ind. 2002).  General jurisdiction makes a non-resident defendant amenable to suit within a particular forum, regardless of the subject matter of the suit, based on the defendant's continuous and systematic contacts with the forum.  See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).  Specific jurisdiction makes a non-resident

---

[2](...continued)
Rule itself would guide the bench and bar in the vast majority of cases.  Lawyers and judges need not explore in every routine case the vast body of case law interpreting both Constitutions. But by adding the language "any basis not inconsistent with the Constitutions," the Indiana Supreme Court restored the extension of Indiana courts' power to protect the legal rights and interests of Indiana residents to the full extent permitted by the Constitutions.  See *Engineered Medical Systems, Inc. v. Despotis*, 2005 WL 2922448, *2 n.2 (S.D. Ind. Nov. 4, 2005) (explaining this court's view); see also *Employee Benefit Mgrs, Inc., of America v. A Medex Transition Admin. Co.*, 2006 WL 1128646, *2 n.2 (N.D. Ind. Apr. 24, 2006) (Springmann, J.) (predicting that Indiana Supreme Court would reject *Pozzo Truck*); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2005 WL 106936, *12-13 (S.D.N.Y. Jan. 18, 2005) (disagreeing with *Pozzo Truck* and predicting that Indiana Supreme Court would follow the plain language of Rule 4.4(A)); *Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952, 955 & n.3 (N.D. Ind. 2004) (Cosbey, J.) (stating, under the current version of Rule 4.4(A), that "the only issue is whether the exercise of jurisdiction . . . comports with federal due process"); but see *Hispec Wheel & Tire, Inc. v. Tredit Tire & Wheel Co.*, 2005 WL 1983846, *3 (N.D. Ind. Aug. 11, 2005) (Miller, C.J.) (following *Pozzo Truck*).

defendant amenable only to suits arising out of or related to the defendant's contacts with a particular forum.  *Id.* at 414.

1.    *General Jurisdiction*

KAZ argues that there is a basis for general jurisdiction over JWR and Hensley.  There clearly is not, and KAZ's arguments on this theory border on the frivolous.  "An Indiana court has general jurisdiction over a defendant if the defendant's contacts with Indiana are substantial, continuous, extensive, and systematic, which Indiana courts have interpreted to include, among other things, having offices in Indiana, being incorporated in Indiana, and having employees in Indiana." *Anthem Insurance Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1235 (Ind. 2000).  The defendant's contacts with the forum must be so extensive as to amount to a constructive presence in the state.  *Purdue Research*, 338 F.3d at 787 & n.16 ("the constitutional requirement for general jurisdiction is 'considerably more stringent' than that required for specific jurisdiction"), quoting *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001); see also *Wilson v. Humphreys Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990) (acknowledging general jurisdiction as a fairly high standard in practice).

JWR has none of the standard bases for general jurisdiction.  It owns no property, maintains no offices or bank accounts, and employs no individuals in Indiana.  It does not carry any governmental licenses in Indiana.  It does not even have customers in Indiana.

KAZ argues that JWR has purchased a substantial volume of goods from at least nine Indiana businesses, including Mohler. The purchases upon which KAZ relies have nothing to do with this case. And as noted above, the record indicates that these purchases amount to less than one percent of JWR's purchases of goods and services over the time period covered. On KAZ's theory, a California resident who spent one percent of her annual income on mail order goods from a company in Maine could be sued in Maine on any claim arising anywhere in the world. KAZ has not cited any case treating a defendant's relatively small and unrelated purchases (as opposed even to sales) in a forum state as a basis for exercising general jurisdiction.

KAZ also argues that JWR's parent company and its other subsidiaries have a substantial presence in Indiana. Courts ordinarily respect separate corporate identities when determining whether a subsidiary's contacts with the forum justify assertion of personal jurisdiction over the parent. See, *e.g.*, *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336 (1925); *Purdue Research*, 338 F.3d at 788 n.17; *Anthem*, 730 N.E.2d at 1240 n.17. Likewise, jurisdiction over a parent corporation does not automatically establish jurisdiction over a wholly owned subsidiary. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). The separate corporate identities may be overcome only where it is shown that the parent company has greater control than would normally be associated with common ownership or that the subsidiary's corporate existence is a mere shell or formality. *Purdue Research*, 338 F.3d at 788 n.17. A subsidiary's relationship

with its sister corporations is evaluated similarly.   See *Williams v. France*, 2001 WL 1385885, *3 (S.D. Ind. Sept. 13, 2001).

Walter Industries does not have facilities, property, bank accounts, or employees in Indiana that would amount to a substantial presence here.   More important, KAZ has not identified evidence to overcome the presumption of institutional independence among JWR and its related corporate entities.   Walter Industries is a Delaware-incorporated, Florida-based holding company with a number of subsidiaries.   As one of those subsidiaries, JWR is a solvent corporate entity with its own by-laws, articles of incorporation, and management structure. It maintains its own offices, facilities, payroll systems, employees, and records. JWR and Walter Industries each has its own board of directors, with only one overlapping member.   Rice Aff. ¶¶ 3-10.   The mere fact that the two entities share a corporate address in Florida and participate in the same "Six Sigma" operations efficiency program does not demonstrate institutional dependence.   Cf. *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F. Supp. 1255, 1261-62 (S.D. Ind. 1997) (treating nine closely held corporations, six limited partnerships, and three individuals as a single entity for jurisdictional purposes where individuals were controlling shareholders, directors, and officers of the corporations and general partners of the partnerships, all nine corporations shared a principal place of business, and all business entities shared an address and telephone number).

KAZ also relies on a "stream of commerce" theory to establish general jurisdiction over JWR in Indiana. The theory is that JWR sells coal to customers on five continents for use in producing steel and electricity. KAZ points out that Indiana produces a lot of steel and uses electricity. This argument confuses specific and general jurisdiction. Under KAZ's theory, JWR would be subject to worldwide jurisdiction in any case, regardless of whether the forum had any other connection to the case. The stream of commerce theory of personal jurisdiction has been a (sometimes controversial) basis for *specific* jurisdiction, as the cases cited by KAZ show. See *Nelson v. Park Industries, Inc.*, 717 F.2d 1120, 1126 (7th Cir. 1983) (reversing dismissal of Hong Kong manufacturer and purchasing agent in product liability claim where defendants knowingly sent product into stream of commerce toward forum state); *Curtis Mgmt. Group*, 717 F. Supp. at 1370 (finding seller of celebrity posters had insufficient knowledge of its distribution system in forum state to constitute minimum contacts in trademark infringement action); *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 242 (N.D. Ind. 1998) (granting motion for leave to conduct discovery following prima facie showing of personal jurisdiction over Taiwanese distributor of allegedly defective batting tee in personal injury suit); see generally *Asahi Metal Industry Co. v. Superior Ct. of California*, 480 U.S. 102, 112-13 (1987) (plurality opinion) (O'Connor, J.) (limiting stream of commerce theory in product liability case and requiring more than manufacturer's mere awareness that product will eventually be sold or used in forum state). The theory is typically applied to require a defendant to respond in

a forum where its product is alleged to have caused injury. It does not serve as a basis for exercising jurisdiction over JWR in this case.

Hensley's contacts with Indiana fall even further short of what is necessary to establish general jurisdiction. Hensley is an Alabama resident who does not own property in Indiana. He has been physically present in the state only twice, the first time being in 1985 while driving through to Chicago, and the second time being an appearance before this court in February 2006. Hensley Aff. ¶ 7. Mr. Hensley did not forfeit his objection to jurisdiction by making a court-ordered appearance to participate in a settlement conference at that time.

In sum, neither JWR nor Hensley had contacts with Indiana amounting to a "constructive presence" in the state for purposes of establishing general jurisdiction here.

2.    *Specific Jurisdiction*

For specific jurisdiction in a case of this type, due process requires that a non-resident defendant must have established contacts with the forum state by purposefully availing itself of the privilege of conducting business there. *Asahi Metal*, 480 U.S. at 108-09; *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475, quoting

*Keeton*, 465 U.S. at 774.  In other words, a defendant's conduct and connection with the forum state should be such that it should reasonably anticipate being haled into court there.  *Burger King*, 471 U.S. at 474.  Specific jurisdiction may be based on even relatively modest contacts with the forum if they have a substantial connection to the plaintiff's action.  See *Burger King*, 471 U.S. at 474-76; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997); *Anthem*, 730 N.E.2d at 1235.

In this case, JWR solicited and then executed a long-term license agreement with an Indiana company.  That agreement led to a one-year, automatically renewable support agreement in August 2002, and to two additional agreements for KAZ to design, program, and test custom software enhancements and a new software module.  The agreements anticipated that KAZ would make changes and upgrades to the licensed software system, and they permitted KAZ to access JWR's computers through live interactive computer sessions.  They resulted in two JWR employees traveling to Indiana on at least one occasion to assist in customization of the software.  See Sergent Aff. ¶ 17.

"[C]ontracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum."  *Purdue Research*, 338 F.3d at 781, citing *Burger King*, 471 U.S. at 478.  The court must consider more closely the context of the entire transaction, including prior

negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing with one another.  *Id.*

Defendant JWR's contacts with Indiana are sufficient to support jurisdiction over a suit involving its license agreement with KAZ and its alleged continued use of KAZ's technology following the breakdown of that agreement.  When JWR deliberately entered into a continuing contractual relationship with KAZ, an Indiana corporation, it purposefully availed itself of the privilege of conducting business in Indiana.  See *Burger King*, 471 U.S. at 473 ("we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities"), quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950); *Purdue Research*, 338 F.3d at 785 (finding personal jurisdiction over defendant's predecessor to cooperative research agreement because the agreement clearly "envisioned continuing and wide-reaching contacts" between the parties), quoting *Burger King*, 471 U.S. at 480; accord, *Woodmar Coin Center, Inc. v. Owen*, 447 N.E.2d 618, 621 (Ind. App. 1983) (defendant "purposely availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident"); see also *Wesleyan Pension Fund*, 964 F. Supp. at 1264 ("a defendant's 'active solicitation, even if for just a single contract, amount[s] to purposeful establishment of contacts with [a] forum that easily satisfies the dictates of due process'"), quoting *Daniel J. Hartwig Associates, Inc. v. Kanner*,

913 F. 2d 1213, 1218 (7th Cir. 1990); cf. *First National Bank of Louisville v. Bezema*, 569 F. Supp. 818, 820 (S.D. Ind. 1983) (holding that nonresident consumer's execution of installment purchase contract for airplane in Indiana was insufficient to create personal jurisdiction, but drawing distinction for individuals or corporations purchasing goods on a commercial scale).

JWR's correspondence with KAZ as part of their contractual relationship demonstrates additional contacts with Indiana. Arora testified that JWR and KAZ exchanged approximately 61 e-mails (see Pl. Ex. J), 300 phone calls, 50 facsimile transmissions, and 17 invoices and payments during 2001. Also in 2001, KAZ employees took control of JWR computers via remote connections about 50 times in live interactive computer sessions. This number doubled in 2002. That year, the two exchanged approximately 105 e-mails (see Pl. Ex. J), 682 phone calls, 50 faxes, and 12 invoices and payments.

JWR is correct that wire and mail communications with an in-state resident, standing alone, are generally insufficient to justify the exercise of jurisdiction over an out-of-state resident. However, such communications may establish minimum contacts when considered as part of a larger interstate commercial contract. See *Purdue Research*, 338 F.3d at 781 ("If, for example, a commercial defendant's efforts are directed toward a particular jurisdiction, the fact that the actor did not actually enter the jurisdiction is not of crucial importance."), citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984), and *Burger King*, 471 U.S. at 476; *Heritage*

*House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990) (observing defendant "created a relationship which is naturally based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction"); accord, *Burger King*, 471 U.S. at 476 ("a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted").

KAZ also points to the choice of law provisions in both the original license agreement and the August 2002 support agreement with JWR. The former provides that Indiana law applies if KAZ initiates any action, while Alabama law applies if JWR initiates an action. The support agreement provides exclusively for Indiana law to govern any action. See Pl. Ex. N, ¶ 10. These provisions do not control the question of jurisdiction, but they provide some additional evidence that JWR could have reasonably expected that Indiana courts would resolve any disputes stemming from its relationship with KAZ. See *Burger King*, 471 U.S. at 481-82; *Purdue Research*, 338 F.3d at 786-87.

All of KAZ's claims arise out of its contractual relations with JWR. But the nature of JWR's alleged misconduct provides additional contacts with Indiana for KAZ's copyright infringement and tort claims. KAZ claims that JWR participated in unlawful side deals with KAZ's own employees, all Indiana residents, and their Indiana businesses to obtain source code and enhancements of the e-

WAREHOUSE software.  KAZ has submitted evidence that from 2003 through 2005, JWR exchanged e-mails and invoices with Maddox and Chris Hemminger, both Indiana residents and former KAZ employees, and their respective Indiana-based companies, NickEllie, LLC and Hemsoft, LLC.  See Arora Aff. ¶¶ 90, 93, 95, 98, 100, 103; Pl. Exs. J. & S.  Any injury to KAZ resulting from these actions would have occurred in Indiana and could serve as a basis for jurisdiction here.  See *Janmark*, 132 F.3d at 1202 (in tortious interference suit, Illinois court could exercise jurisdiction over California defendant who made threatening phone call to Illinois plaintiff's customer in New Jersey, causing injury in Illinois); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 411-12 (7th Cir. 1994) (in trademark infringement suit, noting that injury to Indiana company would be felt primarily in Indiana and subject the infringer to jurisdiction there).

The question is closer with respect to Hensley, but KAZ has made a prima facie showing that he also had sufficient contacts with Indiana to be subject to jurisdiction here.  A bare allegation of a conspiracy between a defendant and a person within the personal jurisdiction of the court is not sufficient to exercise jurisdiction over the defendant.  See *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992), *superseded on other grounds by rule*, Fed. R. Civ. P. 4(k)(2); see also *Employee Benefit Mgrs., Inc.*, 2006 WL 1128646 at *5.  But KAZ has offered Arora's testimony, based on admissions by Maddox, that Hensley personally committed the misconduct underlying several of its claims.  Arora testified that

Hensley assisted Indiana persons and businesses in infringing KAZ's copyright. Arora also testified that Hensley acted to conceal JWR's use and benefit of KAZ's software, and that Hensley entered into a deal with Maddox and NickEllie, independent of JWR or KAZ, to obtain kickbacks and an interest in NickEllie for his own personal gain. These alleged contacts go beyond actions taken solely on behalf of JWR and, if true, gave Hensley fair warning that he could be subject to suit in Indiana in a dispute arising out of the contacts. Should the evidence show at some later time that Hensley was not sufficiently personally involved in these actions, the court's jurisdiction determination could change. See *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 914-15 (7th Cir. 1994) ("the denial of a preliminary challenge to personal jurisdiction, like the denial of a preliminary injunction, is not an automatic bar to the renewal of the motion after evidence bearing on it has been obtained by pretrial discovery or presented at trial"). At this stage, however, KAZ has made at least a prima facie showing that Hensley is subject to jurisdiction in Indiana.

Even where minimum contacts are present, a defendant can escape jurisdiction by making a compelling case that forcing it to litigate in the forum state would be so unreasonable as to violate traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 477; *Logan Productions*, 103 F.3d at 53. In making this determination, courts are to consider: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining the most efficient resolution of the controversies;

(4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 466-67.

JWR and Hensley contend that defending suit in Indiana will subject them to significant cost and inconvenience.  They point out that KAZ has already traveled to Alabama to provide services at JWR's Alabama locations.  They also argue that Alabama courts could resolve this dispute most efficiently because the action there was filed earlier, KAZ and its employees are subject to personal jurisdiction there, and much of the evidence is located there.  JWR claims that any alleged acts of copyright infringement took place in Alabama.

The Seventh Circuit has observed that the factors listed above will rarely justify a determination against jurisdiction, see *Purdue Research*, 338 F.3d at 781 n.10, and this case is no different.  As a major coal producer that does business on five continents, it is likely less burdensome for JWR to defend suit here than it would be for the small, closely-held corporation KAZ to sue in Alabama.  Also, Indiana has an interest in redressing alleged wrongdoing against an Indiana company.  Finally, four of the defendants are Indiana residents and businesses that may not be subject to suit in Alabama, and interests in efficiency favor resolving the claims among all parties at once.

B.    *Beasley*

Finally, the court dismisses the claims against the late James Beasley.  The record indicates that Mr. Beasley died on August 28, 2005.  That fact has been part of this record since no later than October 19, 2005.  KAZ has had ample time to seek to substitute his estate if it wished to do so, and it has not done so within the 90 days allowed by Rule 25(a)(1) of the Federal Rules of Civil Procedure after the death was "suggested upon the record."  See also *Russell v. City of Milwaukee*, 338 F.3d 662, 665-66 (7th Cir. 2003) (affirming dismissal of case with prejudice following plaintiff's death after his representatives and attorneys failed to substitute party within 90 days of defendants' filing "Suggestion of Death on the Record").  KAZ has not provided the court with any reason for finding excusable neglect.  See *id.* at 667-68.

*Conclusion*

The motion to dismiss for lack of personal jurisdiction (Docket No. 47) is denied as to defendants JWR and Hensley.  The claims against Beasley are dismissed with prejudice.  Because the presence of such litigation might interfere with closing his estate, the court finds no just reason for delay and, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, will enter a separate judgment on the claims against Beasley.  JWR's motion to strike portions of Arora's affidavit (Docket No. 139) is granted in part and denied in part.  JWR's motion to strike portions of Arora's second affidavit (Docket No. 146) is granted.  KAZ's motion to

strike Hensley's and Sergent's affidavits is denied, as is its motion for sanctions (Docket No. 145). Defendants' request for oral argument on KAZ's motion for sanctions (Docket No. 152) is denied as unnecessary.


        So ordered.

Date: September 1, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Reynolds B. Brissenden
KROGER GARDIS & REGAS
rbb@kgrlaw.com

Kandi Kilkelly Hidde
BINGHAM MCHALE
khidde@binghammchale.com

James A. Knauer
KROGER GARDIS & REGAS, LLP
jak@kgrlaw.com

John T L Koenig
BARNES & THORNBURG LLP
jkoenig@btlaw.com

John R. Maley
BARNES & THORNBURG
jmaley@btlaw.com

Rafael A. Sanchez
BINGHAM MCHALE
rsanchez@binghammchale.com

DANIEL MADDOX
13550 Uhl Lane NW
Palmyra, IN 47164