UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KNOWLEDGEAZ, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   vs. | ) | 1:05-cv-1019-RLY-WTL |
| | ) | |
| JIM WALTER RESOURCES, INC., GUY | ) | |
| HENSLEY, DENNIS SEIPEL, DANIEL | ) | |
| MADDOX, NICKELLIE, LLC and | ) | |
| ACTION AUTHORITY, LLC, | ) | |
|     Defendants. | ) | |
| | ) | |

**ENTRY ON PLAINTIFF'S MOTION TO DISQUALIFY FIRM AND COUNSEL FOR CONFLICT OF INTEREST AND COSTS AND PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISQUALIFY**

This matter is before the court on Plaintiff's Motion to Disqualify Firm and Counsel for Conflict of Interest and Costs and Plaintiff's Motion for Leave to File Supplemental Brief in Support of Plaintiff's Motion to Disqualify. For the reasons set forth below, the court **GRANTS** Plaintiff's motion for leave to file a supplemental brief in support but **DENIES** Plaintiff's motion to disqualify.

**I.    Motion for Leave to File Supplemental Brief in Support of Plaintiff's Motion to Disqualify**

As an initial matter, Plaintiff filed a motion for leave to file a supplemental brief in support of its motion to disqualify on June 22, 2007. Plaintiff seeks to file a supplemental brief in light of evidence it discovered after filing its initial briefs, which, it argues,

1

supports disqualification. No response to this motion has been filed. The court **GRANTS** Plaintiff's motion for leave and considers the merit of the additional evidence in its discussion below.

## II.     Background

Plaintiff, KnowledgeAZ ("Plaintiff"), filed the present action against Defendants, Jim Walter Resources, Inc. ("JWR"), Guy Hensley, Dennis Seipel ("Seipel"), Daniel Maddox ("Maddox"), NickEllie, LLC ("NickEllie"), Action Authority, LLC ("Action Authority") (collectively "Defendants"), and others no longer part of this lawsuit, arising out of an agreement under which Plaintiff licensed software to JWR. Plaintiff's predecessor, Action System Associates, Inc. ("ASA"), obtained a copyright on the software at issue in April 1992. (Amended Complaint Ex. A). As a result of its merger with ASA in 2000, Plaintiff became the successor to the ownership rights of the software, including the copyright. (Amended Complaint ¶¶ 15, 17). Plaintiff and JWR entered into the System Sales Agreement ("SSA") in January 2001, which limited JWR's use of the software to its one system and a limited number of computer terminals. (Amended Complaint ¶ 18). Plaintiff alleges that JWR violated the SSA by making unauthorized copies of the software. (Amended Complaint ¶ 21). Further, Plaintiff alleges that Seipel and Maddox, employees of Plaintiff, provided unauthorized software copies and source codes to JWR, facilitated through Seipel's and Maddox's limited liability companies, Action Authority and NickEllie. (Amended Complaint ¶¶ 23, 32).

Barnes & Thornburg ("B&T") attorneys John Maley and John Koenig entered

their appearance on behalf of Seipel and Action Authority on August 5, 2005. (Notices of Appearance, Docket ## 27, 28). Plaintiff moved to disqualify B&T on March 1, 2007, on the grounds that B&T previously represented Plaintiff on the same or substantially related matters to those in the present lawsuit and the interests of B&T's current clients, Seipel and Action Authority, are materially adverse to those of Plaintiff.

### III.   Facts Related to Barnes & Thornburg's Prior Representation of ASA

ASA merged into Plaintiff in Spring 2000. (Declaration of Nigam Arora ("Arora Decl.") at ¶ 1, Plaintiff Ex. 1; Amended Complaint ¶ 15). Plaintiff's president, Nigam Arora ("Arora"), was also the president of ASA. (Arora Decl. at ¶ 1). Seipel is a former employee of ASA and Plaintiff. (*See* Seipel Employment Agreement, Arora Decl. Ex. A; Amended Complaint ¶¶ 5, 6).

In 1994, B&T began representing ASA in an employment dispute between ASA and one of its former employees, Spencer Ohleyer ("Ohleyer"). (Declaration of Donald Knebel ("Knebel Decl.") at ¶ 4, Defendants' Ex. 1). ASA filed suit against Ohleyer for allegedly violating his employment agreement with ASA by, *inter alia*, soliciting ASA's customers, making copies of confidential information, and removing and failing to return certain ASA documents/records/materials. (Ohleyer Complaint ¶¶ 6, 7, 9, Defendants' Ex. 3). The Ohleyer lawsuit was dismissed with prejudice on January 3, 1995. (Ohleyer Stipulation For Dismissal, Defendants' Ex. 4).

During the course of its representation of ASA in the Ohleyer lawsuit, B&T attorney Don Knebel ("Knebel") reviewed and suggested modifications to ASA's

employment agreement, detailed in a letter written to Arora dated August 15, 1994. (August 15, 1994, B&T Letter to ASA, Plaintiff's Ex. H). Seipel signed ASA's employment agreement on September 7, 1994. The employment agreements signed by Seipel and Ohleyer are nearly identical. (*Compare* Seipel Employment Agreement, Arora Decl. Ex. 1, *with* Ohleyer Employment Agreement, Ohleyer Complaint Ex. A).

In addition to the Ohleyer lawsuit, B&T's Knebel spent 0.3 hours reviewing part of a license agreement for ASA in February 1995. (Knebel Decl. at ¶ 11; Arora Decl. at ¶ 3d). The license agreement reviewed by Knebel is plainly different than the SSA at issue in the present case. (*Compare* Knebel License Agreement, Knebel Decl. Ex. C, *with* System Sales Agreement, Amended Complaint Ex. B). However, the two agreements both contain clauses on warranties and limitation of remedies. (Knebel License Agreement at 4, 9; System Sales Agreement Ex. C at 6). In August 1995, B&T's Knebel spent 0.3 hours reviewing documents for ASA regarding an agreement with Mattel. (Knebel Decl. at ¶ 12; Knebel Decl. Ex. D).[1]

Plaintiff also alleges that B&T provided advice to ASA on the scope of the software copyright at issue in this case, which had been obtained prior to B&T's

---

[1] B&T asserts that August 1995 is the last time it represented ASA. However, Plaintiff argues in its supplemental brief in support of its motion to disqualify that B&T sought to represent ASA again in November 1995, as evidenced by a B&T inter-office memorandum. However, the court finds the fact that B&T later sought to represent ASA again is irrelevant. The concern in this case is whether B&T could have obtained confidential information during its representation of ASA that it could use in the present matter. The mere fact that B&T sought to represent ASA in other matters, without evidence of a subsequent attorney-client relationship where confidential information could have been shared, has no bearing on whether the court should disqualify B&T in the present matter.

representation of ASA.  (Arora Decl. at ¶ 3c.).  However, B&T disputes that it ever provided advice regarding copyright registration to ASA—B&T has no record of providing such advice, nor do any of the attorneys who worked with ASA on the other matters recall giving ASA such advice.  (Gayheart Decl. at ¶ 9; Knebel Decl. at ¶ 9; Declaration of Lynn Tyler ("Tyler Decl.") at ¶ 10).

**IV.    Discussion**

Part of the court's duty is to protect the sacrosanct privacy of the attorney-client relationship.  *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982).  By helping to protect this duty, "a court helps to maintain public confidence in the legal profession and assists in protecting the integrity of the judicial proceeding."  *Id*.  Disqualification is one avenue that a court may use to protect the attorney-client relationship, but because it also deprives a party of representation of its own choosing, it should be used only when absolutely necessary.  *Id*.  Nonetheless, any doubts as to whether an asserted conflict exists should be resolved in favor of disqualification.  *United States v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990) (quoting *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir. 1983)).

Indiana Rule of Professional Conduct 1.9, which governs the present motion, provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

5

IND. RULES OF PROF'L CONDUCT R. 1.9(a).[2] The Seventh Circuit has clarified that matters are "substantially related" "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983); *see, e.g., Volkswagen Aktiengesellschaft v. Novelty, Inc.*, 247 F. Supp. 2d 1076, 1082 (S.D. Ind. 2003) (finding matters substantially related where law firm first represented Volkswagen ("VW") in trademark infringement case involving VW's logo pertaining to the "Beetle" and "Bug" and later represented the defendant in a trademark infringement suit brought by VW involving the same logos). Whether the lawyer actually obtained confidential information and then used it against his former client is irrelevant. *Analytica, Inc.*, 708 F.2d at 1266. There is an irrebuttable presumption of shared confidences where a law firm has, in essence, "changed sides" in the same or substantially related matters. *Id.* at 1267; *Schiessle v. Stephens*, 717 F.2d 417, 420 n.2 (7th Cir. 1983).

The comments to the Indiana Rules of Professional Conduct provide additional guidance on whether matters are substantially related.

> The scope of "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a

---

[2] This court's Local Rules provide that the Rules of Professional Conduct adopted by the Indiana Supreme Court govern the standards of conduct for attorneys practicing in this court. S.D. Ind. R. 83.5(g).

>former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.

IND. RULES OF PROF'L CONDUCT R. 1.9 cmt. 2.

The central issue here is whether the matters on which B&T represented ASA are substantially related to those in the present suit where B&T represents the adversary to ASA's successor. If the court determines that the matters are substantially related, then B&T must be disqualified under Indiana Rule of Professional Conduct 1.9.

Plaintiff argues that the matters are substantially related because B&T previously provided legal advice to ASA regarding "ASA's intellectual property rights, employment agreements, and system sales agreements." (Plaintiff's Brief in Support at 7, Docket # 181). The claims encompassed in the Amended Complaint in the current lawsuit include "infringement of software copyright, breaching and inducing breach of fiduciary duty of employment, hiring employees of [Plaintiff] in breach of sales agreement, and tortuous [sic] interference with employment relationships." (Plaintiff's Brief in Support at 7). Plaintiff argues that these matters are substantially related; Plaintiff's interests are materially adverse to B&T's present clients; and as such, B&T must be disqualified.

On the other hand, B&T argues that the matters are not substantially related because the present lawsuit contains no claims relating to Seipel's employment agreement; the license agreement it reviewed for ASA is plainly different than the System Sales Agreement at issue here; and B&T never counseled ASA on the scope of the copyright registration central to this case.

The primary matter on which B&T represented ASA was an employment dispute regarding an employee who violated his employment agreement by soliciting ASA's customers and not returning certain ASA materials after he left ASA. The employment dispute within the present case involves Seipel, B&T's client, breaching his fiduciary duty to Plaintiff by copying and transferring software without Plaintiff's authorization.

As set forth in comment 2 to Rule 1.9 of the Indiana Rules of Professional Conduct quoted above, lawyers who formerly handled a certain type of matter for one client may represent another client in a factually distinct case of that type even if the latter representation involves a position adverse to the former client. Although the matter in which B&T represented ASA and the present matter both involve the employer-employee relationship, they are otherwise inapposite. Seipel is accused of breaching his fiduciary duty to Plaintiff, not breaching the employment agreement, nor does Plaintiff allege that Seipel's fiduciary duty arises from the employment contract. The allegations surrounding Seipel focus on him making unauthorized copies of Plaintiff's software and providing source codes to JWR without Plaintiff's authorization. Ohleyer, the employee against which B&T's former client, ASA, filed suit was not alleged to have committed such acts. The fact that Seipel signed a nearly identical employment agreement to the one on which B&T counseled Plaintiff's predecessor does not make the two matters substantially related. The employment agreement is not an issue in this case, and any confidential information B&T would have obtained while advising ASA on its employment agreement would be irrelevant here.

Further, the fact that B&T reviewed parts of an ASA licensing agreement does not preclude B&T from representing Seipel and Action Authority in this case involving a wholly different licensing agreement. The parts of the licensing agreement that B&T reviewed for ASA, which included warranty and remedy clauses, do not mention the nature of the licensed materials, the scope of the license, or any other particulars that may be pertinent to the present case. Rather, there is no evidence that the license agreements share any commonalities, except for boilerplate language common in most sales contracts. The fact that B&T reviewed the warranty and remedy clauses in ASA's license agreement and now represents ASA's adversary in a dispute involving another license agreement also containing warranty and limitation of liability clauses is insufficient to conclude that B&T should be disqualified.

The last ground on which Plaintiff seeks to disqualify B&T is that B&T provided ASA advice on the scope of the software copyright at issue in this case. Plaintiff's president, Arora, swears in his affidavit that B&T provided such advice. However, the B&T attorneys who worked with ASA swear in their affidavits that they never provided such advice. Additionally, the billing records of those B&T attorneys make no mention of advice regarding the scope of a copyright. If the court were to find merit in Plaintiff's assertion, then that may be grounds to disqualify B&T, as two cases involving the same copyright would likely be "substantially related matters."

However, the evidence in this case does not support Plaintiff's allegation that B&T provided ASA advice on the copyright. In the normal course of business, an attorney

9

asked to provide advice on a matter would write a letter to or perhaps call the client with his or her advice and would bill for that time. In this case, B&T followed that course with respect to providing advice on both the employment agreement and the license agreement. B&T attached its letter regarding the employment agreement and attached the portions of the license agreement it reviewed with the fax noting that Arora would call for B&T's advice. (Knebel Decl. Exs. B, C). Further, the billing records indicate that B&T attorney Knebel provided advice on both those matters. (Gayheart Decl. Ex. A at 2). The court finds little merit in Plaintiff's assertion that B&T also provided advice on the scope of the copyright at issue in this case, when the record is noticeably absent of any documentation of B&T providing such advice. Therefore, Plaintiff's allegation that B&T provided advice on the scope of the copyright at issue in the present case cannot provide grounds for B&T's disqualification.

Finally, the court notes that Plaintiff's delay in seeking to disqualify B&T weighs against disqualification. Failing to file a motion to disqualify with reasonable promptness after a party discovers the facts leading to the motion may waive the party's right to seek disqualification. *See Kafka v. Truck Ins. Exch.*, 19 F.3d 383, 386 (7th Cir. 1994) (finding a disqualification argument waived because it was not made until after the trial); *Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978) (refusing to disqualify firm because motion was made more than two years after movant knew of facts providing the basis for disqualification). In deciding whether a party has waived its right to seek disqualification by delaying in bringing the motion to disqualify,

the court must balance the policy of preserving former client confidences with that of allowing parties the freedom to choose their legal counsel. *Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 832 (Fed. Cir. 1988) (applying Ninth Circuit law and citing MODEL RULES OF PROF'L CONDUCT R. 1.10 cmt. (1983)).

In this case, the court finds that the policy considerations weigh against disqualification. Plaintiff waited approximately eighteen months to bring its motion to disqualify. If the court were to disqualify B&T at this point, Seipel and Action Authority would not only have lost its freedom to choose legal counsel, but it would have lost two years of legal representation. Forcing Seipel and Action Authority to find new legal counsel at this point would be highly prejudicial. Considering the fact that B&T did not represent ASA on matters substantially related to those involved in the present suit and Plaintiff's delay in filing the motion to disqualify, the court finds that disqualification is inappropriate.

### V.  Conclusion

For the reasons set forth above, the court **GRANTS** Plaintiff's motion for leave to file a supplemental brief in support (Docket # 213) and **DENIES** Plaintiff's motion to disqualify firm and counsel for conflict of interest and costs (Docket # 180).

**SO ORDERED** this 3rd day of August 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

11

Electronic copies to:

Kevin M. Boyle
OVERHAUSER LAW OFFICE
kboyle@overhauser.com

Mark J. Dinsmore
BARNES & THORNBURG LLP
mark.dinsmore@btlaw.com

Kandi Kilkelly Hidde
BINGHAM MCHALE
khidde@binghammchale.com

John T L Koenig
BARNES & THORNBURG LLP
jkoenig@btlaw.com

John R. Maley
BARNES & THORNBURG
jmaley@btlaw.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES
poverhauser@overhauser.com

Rafael A. Sanchez
BINGHAM MCHALE
rsanchez@binghammchale.com

Dennis Scott Schell
OVERHAUSER LAW OFFICE
dschell@overhauser.com

Copy to:

DANIEL MADDOX
13550 Uhl Lane NW
Palmyra, IN 47164