UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **KNOWLEDGE A-Z, INC.,** )  ) | |
| Plaintiff, ) ) | |
| vs. ) ) | CAUSE NO. 1:05-cv-1019-RLY-WTL |
| **JIM WALTER RESOURCES, INC., et al.,** ) ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION REGARDING
### VARIOUS MOTIONS FOR SANCTIONS

This cause has been referred to the Magistrate Judge to resolve various motions for sanctions. Having considered the parties' briefs and their informal arguments regarding the motions during a recent status conference, the Magistrate Judge, being duly advised, hereby recommends the following resolution with regard to each of the referred motions.

Motion for Sanctions (dkt. #202)

By letter dated March 9, 2007, counsel for Defendant Jim Walter Resources, Inc. ("JWR") notified counsel for Plaintiff KnowledgeAZ, Inc. ("KAZ") that JWR wished to depose Nigam Arora and requested dates that Mr. Arora was available for that deposition during either the week of April 30, 2007, or the week of May 14, 2007. The letter also noted that JWR intended to conduct a Rule 30(b)(6) deposition of KAZ.

In an ideal world, KAZ's counsel would have promptly ascertained which of the proposed dates was most convenient for Mr. Arora and reported back to JWR's counsel, who then would have prepared a deposition notice for that date and sent it to Mr. Arora via KAZ's counsel. The deposition would have proceeded as scheduled, and the Rule 30(b)(6) deposition, for which Mr. Arora was KAZ's designated witness, would also have been scheduled and conducted in a cooperative manner. Unfortunately for all involved, however, the world of this case is far from ideal. What actually transpired was that counsel were unable to agree on a date and other details regarding the depositions requested by JWR and so, on April 4, 2007, JWR issued notices for both

Mr. Arora's deposition and the Rule 30(b)(6) deposition of KAZ.  The former was noticed for May 17, 2007, and the latter for the following day.  In light of the fact that Mr. Arora was both an officer and a director of KAZ, the notice served on KAZ's counsel was all that was necessary to secure Mr. Arora's attendance at his deposition, inasmuch as KAZ was obligated to produce him as a witness.  *Cf.* Advisory Committee Notes to the 1970 Amendment to Rule 37(d) ("The failure of an officer or managing agent of a party to make discovery . . . is treated as the failure of the party."). Surprisingly, however, by letter dated May 10, 2007–more than a month after the deposition notices were served and only a week prior to the date the depositions were scheduled to commence–KAZ's counsel took the position that he was not authorized to accept service on behalf of Mr. Arora and that the notice was further invalid because it was not accompanied by a witness fee.[1]  Although not required to do so, JWR promptly tendered a witness fee check and engaged a process server to attempt to serve Mr. Arora with a subpoena at his home. That attempt was unsuccessful,[2] and Mr. Arora failed to appear for his May 17th deposition.  Because JWR wished to depose Mr. Arora before deposing KAZ, JWR cancelled the May 18th deposition.

     In its motion, JWR seeks sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(i) for Mr. Arora's failure to appear for his deposition.  That Rule provides for sanctions if "a party or a party's officer, director, or managing agent–or a person designated under Rule 30(b)(6) or 31(a)(4)–fails, after being served with proper notice, to appear for that person's deposition."  Indeed, the sanctions sought by JWR–reimbursement of its expenses–are not only appropriate; they are made virtually mandatory by Rule 37(d)(3):  "[T]he court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses,

---

[1] In fact, no witness fee was required because Mr. Arora, as an officer and director of KAZ who is personally involved in this litigation, is not a "witness" under 28 U.S.C. § 1821.  *See WH Smith Hotel Servs., Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 429 (7th Cir. 1994).

[2] The process server reported that while people were home at the Arora residence, no one would answer the door and he was instructed by the residents to leave the property.

including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

KAZ argues that Rule 37(d)(1)(A)(i) does not apply because Mr. Arora was never served with a subpoena. The Rule does not require a subpoena, however; it requires "proper notice," which is defined in Rule 30(b)(1). While Rule 30(a)(1) provides that a "deponent's attendance may be compelled by subpoena under Rule 45," a subpoena is separate and distinct from "notice," and Rule 37(d)(1)(A)(i) makes it clear that only notice is required when a party or its officer or director is involved.[3] KAZ's argument that Rule 37(d)(1)(A)(i) applies only when the deponent is to testify in "his corporate 30(b)(6) capacity" is belied by the plain language of the rule itself, which clearly recognizes three categories of deponents to which it applies: "a party"; "a party's officer, director, or managing agent"; and "a person designated under Rule 30(b)(6) or 31(a)(4)."

KAZ also argues that Rule 37(d)(1)(A)(i) does not provide for an award of sanctions where, as here, the party made some response (an objection) to the deposition notice at issue. In so arguing, KAZ confuses Rule 37(d)(1)(A)(ii), which applies to interrogatories and document requests, with Rule 37(d)(1)(A)(i), which applies to deposition notices. The former expressly provides a party the option of serving timely objections to the discovery requests to avoid sanctions; the latter does not. Rather, KAZ was obligated to file a motion for protective order if it was unable or unwilling to produce Mr. Arora for his deposition. It did not do so.

KAZ's final argument is that an award of sanctions would not be appropriate in this instance because its position that Mr. Arora was not obligated to attend his deposition absent a subpoena served on him personally was substantially justified and the problems surrounding the scheduling of Mr. Arora's deposition were caused by JWR's lack of persistence and inflexibility, rather than anything KAZ or its counsel did. KAZ's attempt to portray itself as the cooperative party in this

---

[3]By contrast, any other deponent would be subject to an order of contempt for failure to appear, but only if he or she were served with a subpoena. *See* Federal Rule of Civil Procedure 45(e).

3

situation is unconvincing. Taking KAZ's counsel at his word that he believed–incorrectly–that a subpoena to Mr. Arora was technically required under the Federal Rules, that does not explain either KAZ's insistence that the formal subpoena process be utilized or the fact that he waited more than a month before he informed JWR that KAZ and Mr. Arora were unwilling to agree to the informal notice procedure. This is not a case involving an officer of a large corporation with no personal involvement in the litigation or the matters leading up to it. Rather, as far as this litigation is concerned, Mr. Arora is the voice and face of KAZ. There is no question that KAZ's counsel was fully capable of communicating with Mr. Arora regarding the deposition notice, and if they were really interested in acting cooperatively, as they now claim, then they would have complied with the deposition notice. If Mr. Arora was unable to make himself available on the noticed date, KAZ could have promptly contacted JWR's counsel to attempt to agree on an alternate date; there was ample time to do that and still file a motion for protective order if agreement could not be reached.[4] Instead, KAZ's counsel chose to remain silent for over a month before informing JWR that it would have to jump through completely unnecessary hoops in order to attempt to secure Mr. Arora's attendance.

Taking a deposition involves coordinating the schedules of numerous busy individuals and making other arrangements such as scheduling a court reporter and reserving an appropriate space. Implicitly recognizing this, the Federal Rules take the failure to appear for a noticed deposition very seriously. The Court does as well. JWR has submitted an affidavit and supporting exhibits that establish that its fees and expenses related to its efforts to schedule Mr. Arora's deposition and in

---

[4] On April 3, 2007, KAZ informed JWR that there were only two options for deposing Mr. Arora between then and May 21, 2007: April 6th or May 18th beginning no earlier than 11:30 a.m. This, alone, demonstrates that KAZ was not acting with the cooperative spirit it now professes. Mr. Arora is most certainly a busy person; however, litigation is inconvenient, and it is often necessary to reschedule other commitments in order to make oneself available for the demands of pursuing a lawsuit. Had a motion for protective order been filed, KAZ would have had the rather steep burden of demonstrating to the Magistrate Judge that Mr. Arora truly was unable to make himself available any more than the 1½ days he offered during that six-week time period.

filing the instant motion total $4,227.00.  KAZ does not dispute the reasonableness of this amount, and the Magistrate Judge finds it to be reasonable.

The only remaining question is whether the sanctions should be paid by "the party failing to act [KAZ], the attorney[s] advising that party, or both."  In this case, it appears that KAZ was misled by its attorneys into believing that it had no obligation to produce Mr. Arora for his deposition.  In addition, as discussed above, KAZ's counsel's failure either to make KAZ's position known to JWR in a prompt manner or to file a motion for protective order led to JWR incurring unnecessary expenses in its ill-fated attempt to depose Mr. Arora.  Accordingly, the Magistrate Judge determines that KAZ's counsel should be responsible for reimbursing JWR for those expenses.

For the reasons set forth above,  JWR's motion for sanctions in the amount of $4,227.00 is **GRANTED**.  KAZ's counsel shall pay JWR this amount **within 30 days of the date of this Entry**.

<u>Motion for Attorneys' Fees and Costs (dkt. #294)</u>

This is really two motions in one, inasmuch as JWR seeks sanctions in connection with two separate discovery disputes.  First, JWR asserts that it is entitled to an award of its expenses relating to its efforts to obtain documents by means of certain non-party subpoenas.  Second, it seeks sanctions because it was forced to file a motion to compel in order to obtain information regarding KAZ's expert witnesses and their anticipated testimony.  Each of these issues is addressed in turn below.

*Non-Party Subpoenas*

In response to JWR's document requests in this case, KAZ informed JWR that many of its corporate documents had been stolen and therefore were no longer in KAZ's possession or control.  JWR then turned to more creative means of obtaining those documents, including issuing subpoenas to R. Neal Sinclair and Raymond Seach.  Mr. Sinclair, a former business partner of Mr. Arora, has been the adverse party to Mr. Arora and/or his wife in four lawsuits in Indiana state courts; Mr. Seach is Mr. Sinclair's attorney.  JWR initially issued subpoenas that essentially requested all of the

documents that Sinclair and Seach had regarding those four lawsuits.  Mr. Arora filed a motion to quash those subpoenas, asserting that they were overly broad in that many of the documents relating to the state court lawsuits pertained to Mr. and Mrs. Arora individually, rather than to KAZ, and therefore were irrelevant to the issues in this case.  The Magistrate Judge granted the motion to quash, after which JWR served amended subpoenas that requested only those documents that related to KAZ or the eWarehouseA-Z software program.

What followed is what is best described as a determined effort by Mr. Arora to control which documents were produced by Sinclair and Seach in response to the subpoena.  Unfortunately, these efforts included not only courteous objections to the scope of Sinclair and Seach's proposed production by Mr. Arora's attorney, but also actions by Mr. Arora himself, including sending what has been–not unreasonably–characterized by JWR as a threatening email to JWR's counsel accusing him of obtaining documents by "nefarious means."  When it became evident that Sinclair and Seach could not reasonably be expected to comply with the subpoena without the protection of a court order, given Mr. Arora's objections, JWR filed a motion to compel.  In response, Mr. Arora, acting pro se in an effort to save money, filed a series of motions, all of which, in one way or another, expressed his dissatisfaction with the scope of the documents he believed Sinclair and Seach intended to produce to JWR and his outrage at what he perceived as improper extra-judicial methods he believed JWR was using to obtain documents.  As the Magistrate Judge's entry resolving those motions make clear, none of Mr. Arora's arguments were meritorious, something that was evident from a quick reading of the motions, all of which were denied.

In its motion for sanctions, JWR argues that Mr. Arora's conduct–which undeniably complicated JWR's efforts to obtain relevant documents–is sanctionable and that KAZ should also be held accountable for that conduct, on the ground that "KAZ cannot seek to accomplish, through Mr. Arora–its alter ego, what would be sanctionable if KAZ were to engage in this type of conduct itself."  JWR's Brief at 8.  Although the Magistrate Judge appreciates JWR's frustration with Mr.

Arora's actions and understands that in many ways KAZ does, in fact, speak and act through Mr. Arora, in this instance it appears that Mr. Arora was acting not as the voice of KAZ, but rather as an individual, and that he was motivated by his desire to keep his and his wife's personal information–including, for example, his wife's medical records–confidential.  The fact that Mr. Arora's interests in this instance diverged from those of KAZ is evidenced by the fact that Mr. Arora was represented by his own counsel (when he was not acting pro se) in his quest to prevent Sinclair and Seach from producing the documents at issue.  Unlike the situation with Mr. Arora's deposition, in which he was being deposed because of his status as an officer and director or KAZ, thereby obligating KAZ to produce him, with regard to the Sinclair and Seach subpoenas he was working to protect his personal interests, not those of KAZ, and therefore KAZ had no obligation to control his actions.

The question, then, is whether Mr. Arora, personally, should be sanctioned for his conduct. JWR argues that the Court should treat Mr. Arora as a party and issue sanctions against him pursuant to Federal Rules of Civil Procedure 37 and 45; however, as already discussed, Mr. Arora was not acting as a party, but rather as a non-party whose personal information from unrelated lawsuits had been implicated by non-party subpoenas.  Certainly, as noted by the parties, the Court retains the inherent ability to sanction the improper conduct of those that interject themselves into its proceedings.   However, while Mr. Arora's objections to the subpoenas were legally unfounded and his methods of expressing his objection certainly lacked decorum, his conduct was not so unreasonable as to warrant the exercise of the Court's inherent contempt powers.  Again, the Magistrate Judge understands JWR's frustration with the extra expenses it incurred because of Mr. Arora's unfortunate behavior.  However, in truth Mr. Arora's pro se motions were so lacking in merit that they did not merit more than a pro forma response from JWR and, indeed, given the Magistrate Judge's previous ruling and direction regarding narrowing the non-party subpoenas, JWR's motion to compel, while necessary in order to give Sinclair and Seach the protection of a

7

Court order directing them to produce the documents, could have been pro forma as well.  Mr. Arora is reminded, however, that he has been warned to stop interjecting himself into this case, and further actions by him that burden the Defendants in this case will not be treated with such leniency.

*Expert Witnesses*

JWR seeks to recover its fees and expenses in the amount of $10,797.82 that it incurred in filing its Motion to Exclude Expert Witnesses or, in the Alternative, to Compel Expert Reports and Expert Interrogatories, which it filed after KAZ refused to provide any information about the opinions of its expert witnesses and the bases for those opinions.  That motion was granted in part and denied in part, which means that under Federal Rule of Civil Procedure 3(a)(4)(C) the Court has discretion to "apportion the reasonable expenses for the motion."  In this case, the Magistrate Judge does not believe that an award of expenses to either party is appropriate.  Certainly KAZ's position that it was not obligated to provide substantive responses to JWR's expert interrogatories was meritless.  However, a motion to compel addressing that issue alone would have been simple, straightforward, and far less expensive than the motion that JWR filed, the majority of which was devoted to attempting (unsuccessfully) to convince the Court to exclude KAZ's experts entirely or require them to submit formal expert reports.[5]  KAZ incurred significant expense responding to those portions of JWR's motion that were denied; ordering it to pay more would not be just under the circumstances.

<u>Motion to Strike KnowledgeAZ, Inc.'s Untimely Witness and Exhibit List (Final) (dkt. #296)</u>

KAZ filed its final witness and exhibit lists on Monday, December 10, 2007.  The deadline

---

[5]That is not to say that JWR's counsel's decision to go for broke was unreasonable; indeed, the full relief it sought may well have been within the Court's discretion.  However, the Rules do not provide for an award of expenses for a motion that could have been granted.  Indeed, even when a motion is granted, an award of expenses is not appropriate if the losing party's position was substantially justified.  In other words, the Rules recognize that the Court has substantial discretion in ruling on many discovery motions, and in such circumstances a party is not penalized for unsuccessfully urging the Court to exercising its discretion differently than it ultimately chooses to.

was Friday, December 7th.  On December 14th, JWR filed a motion asking the Court to "strike KAZ's Witness List and Exhibit List (Final), dismiss this action in its entirety, and/or exclude KAZ's undisclosed witnesses and exhibits from trial and for all other appropriate relief."  This motion is **DENIED**.  Deadlines are important and sanctions for missing them are available and appropriate when warranted by the circumstances.  Those circumstances clearly are not present here, where JWR suffered absolutely no prejudice from KAZ's delayed filing.  The Magistrate Judge can only assume that JWR's counsel's decision to file this motion was colored by their overall frustration at the discovery process in this case, including the actions of Mr. Arora and KAZ that have already been discussed in this Entry.

<u>Motion for KnowledgeAZ, Inc., and/or the Aroras to Be Held in Contempt (dkt. #328)</u>

As JWR notes in its brief, the factual basis for this motion is lengthy and complex.  To make a very long story short, the parties contacted the Magistrate Judge and requested a telephonic conference to discuss a discovery dispute; that conference was held on November 26, 2007.  At issue was a non-party subpoena that JWR had issued to the law firm Sommer and Barnard.  The subpoena was materially identical to those issued to Sinclair and Seach which the Magistrate Judge had ruled were appropriate, and the parties essentially sought guidance regarding how the document production from Sommer and Barnard should proceed, and particularly whether and to what extent KAZ was entitled to review the documents prior to their production.  The Magistrate Judge ruled that counsel for KAZ could review the documents that Sommer and Barnard intended to produce before they were served on JWR, but that the review could be for privilege only, not responsiveness or relevance.

While the Magistrate Judge has no specific recollection of doing so during this particular conference, it is his custom to inform counsel that if they are not satisfied with the rulings made as a result of such informal conferences, they are encouraged to initiate formal briefing of the issues, in light of the fact that the subtleties of a particular situation can be missed during a short telephonic

conference. That seems to be exactly what happened here. The Magistrate Judge assumed when he made his ruling on November 26, 2007, that a Sommer and Barnard attorney would review its files and produce only those documents that were responsive to JWR's subpoena. It appears that was not the case, however; rather, Sommer and Barnard intended to produce its files as they were kept in the ordinary course of business, having removed only privileged documents and certain other categories of documents. That was certainly Sommer and Barnard's right; however, it gave more credence to KAZ's position that it should be permitted to review the documents for responsiveness as well as privilege. In addition, the Magistrate Judge was not aware (or at least did not fully appreciate) that the documents were covered by a protective order entered by another court, which added yet another wrinkle to the situation.

This is not to say that the ruling would have been different had KAZ filed a formal motion to reconsider, but rather that the issue was sufficiently complex that a motion to reconsider would have been appropriate. KAZ did not file one, however. Instead, over the next six weeks or so, counsel for KAZ (and/or the Aroras)[6] waged a battle with Sommer and Barnard regarding its decision to produce what KAZ believed to be "voluminous amounts" of unresponsive documents. Undoubtedly the unpleasant tone and intensity of these exchanges were the result of an on-going, unrelated dispute between KAZ and Sommer and Barnard which had culminated in Sommer and Barnard asserting a lien over KAZ's files. The situation was also frustrated by the fact that several attorneys were involved in representing KAZ and/or Mr. and Mrs. Arora, and at times it was impossible for JWR to know the scope of any given attorney's authority to speak on behalf of KAZ and the Aroras.

In the end, Sommer and Barnard released its lien and KAZ's counsel obtained and reviewed the documents and produced them to JWR. JWR then withdrew its subpoena to Sommer and Barnard on February 1, 2008. The process certainly took longer and was undoubtedly more

---

[6]JWR's motion is directed to KAZ "and/or the Aroras." For ease of reference, the Magistrate Judge will refer simply to KAZ, although to the extent that JWR directs a particular argument toward the Aroras as well, KAZ should be read to include the Aroras.

unpleasant than the parties and the Magistrate Judge anticipated during the November 26th telephonic conference.  However, as mentioned at the outset of this discussion, it would have been appropriate for KAZ to file a motion to reconsider the November 26th informal ruling, and even if it had done so very promptly, considering the time for briefing and ruling, it is unlikely that JWR would have received the documents any more quickly than it did, even assuming that KAZ's motion would have been denied in its entirety.  In other words, JWR ultimately was not prejudiced by KAZ's actions.  Further, while JWR characterizes KAZ's actions as simply obstruction and obfuscation, it is at least as likely that KAZ's goal was not to prevent JWR from obtaining documents to which it was entitled, but rather only to protect from disclosure documents that are irrelevant to this case and that, for whatever reason, KAZ and the Aroras feel very strongly about protecting.  Therefore, viewing the situation as a whole, there is simply no grounds for holding KAZ or the Aroras in contempt, and JWR's contempt motion is **denied**.

Supplemental Contempt Motion (dkt. #343)

In their Supplemental Motion for KnowledgeAZ, Inc., and/or the Aroras to Be Held in Contempt, JWR asks the Court to dismiss this case as a sanction for KAZ's failure to reveal the fact that two individuals, Nishtha Jaswal and Paramjit Jaswal, have served as directors of KAZ and thus have knowledge relating to this lawsuit.  JWR argues that the sanction of dismissal is appropriate for the following reasons:  (1) KAZ failed to identify the Jaswals in their initial disclosures or witness lists; (2) KAZ, via Mr. Arora, testified during its deposition that Mr. Arora was the only director of KAZ; and (3) KAZ failed to identify the Jaswals in response to JWR's interrogatory asking for the identity of any persons with "knowledge of any of the issues or allegations pertinent to this lawsuit."

The first two arguments are easily disposed of.  KAZ had no obligation to list the Jaswals on their witness lists or include them in their initial disclosures unless they were witnesses whom KAZ "may use to support its claims or defenses."  *See* Federal Rule of Civil Procedure 26(a).  There is no indication that KAZ ever considered calling the Jaswals as witnesses in this case.  Further, KAZ's

Board minutes support KAZ's assertion that when Mr. Arora testified at his deposition, he was, in fact, the only director of KAZ at the time of his deposition and, therefore, his testimony was truthful. Specifically, the Board minutes reveal that the Jawals were directors as early as August 28, 2003, at which time it was resolved that they would act as legal counsel for KAZ and would be paid "upon culmination of current litigations." However, on May 15, 2007, the minutes indicate that Mr. Arora was "elected as the Sole Director of the corporation for the ensuing year,"[7] and then, in an apparent reversal, on August 15, 2007, the Jaswals were "elected as two additional Directors of the corporation for the ensuing year." KAZ was deposed on July 31, 2007, during the short period of time that he was (according to the minutes) the sole director of KAZ. While this timing undoubtedly appears suspicious to JWR, there is no evidence to support the suggestion that the Board minutes are not authentic.

This leaves the fact that KAZ failed to disclose the Jaswals in response to JWR's interrogatory seeking all persons with relevant knowledge. The Magistrate Judge agrees with JWR that KAZ's response to the interrogatory should have included the Jaswals. However, KAZ has provided a reasonable explanation for not doing so:

> Subsequent to the filing of various litigations to which KAZ is a party, the Jaswals, who are both attorneys, were elected as directors solely to provide KAZ with legal advice. Thus, to the extent that either of the Jaswals provided legal advice to KAZ regarding the present litigation, the advice is privileged and is not discoverable. Thus, it was proper that KAZ did not disclose the Jaswals in its initial disclosures, witness lists, or interrogatory responses.

KAZ's Response at 15. While more specific information would be necessary for the Court to determine whether the Jaswals were acting solely as legal counsel–in which case they likely did not have to be disclosed–or in a dual business/legal capacity–in which case they should have been

---

[7]JWR asserts that "[t]he Board Minutes contain absolutely no reference to electing Mr. Arora as the sole director," failing to acknowledge the May 15, 2007, minutes attached to KAZ's response brief, which clearly state that Mr. Arora was elected during that meeting as the sole director of KAZ.

disclosed–KAZ's position is at least reasonable enough to avoid sanctions. Accordingly, the supplemental contempt motion is **denied**.

### Mr. Arora's Motions (dkt. #377 and #378)

Mr. Arora filed two collateral motions in response to JWR's contempt motion: Motion for Leave to Conduct Discovery (dkt. #377) and Request for Evidentiary Hearing (dkt. #378). In light of the denial of the contempt motions, both of Mr. Arora's motions are **denied as moot**.

### CONCLUSION

For the reasons set forth above, the Magistrate Judge recommends that the Court resolve the referred motions in the following manner:

1. JWR's Motion for Sanctions (dkt. #202) is **GRANTED** and KAZ's counsel shall pay sanctions to JWR in the amount of $4,227.00 **within 30 days of the date of this Entry**;

2. JWR Defendants' Motion for Attorneys' Fees and Costs (dkt. #294) is **DENIED**;

3. JWR's Motion to Strike KnowledgeAZ, Inc.'s Untimely Witness and Exhibit List (dkt. #296) is **DENIED**;

4. JWR's Motion for KnowledgeAZ, Inc., and/or the Aroras to Be Held in Contempt (dkt. #328) is **DENIED**;

5. JWR's Supplemental Contempt Motion (dkt. #343) is **DENIED**;

6. Arora's Motion for Leave to Conduct Discovery (dkt. #377) is **DENIED AS MOOT**; and

7. Arora's Request for Evidentiary Hearing (dkt. #378) is **DENIED AS MOOT**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the ten days after service shall constitute a waiver of subsequent review absent a showing of good cause

for such failure.

    SO ORDERED:   06/25/2008

*William T. Lawrence*

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Copies to:

Kevin M. Boyle
OVERHAUSER LAW OFFICE
kboyle@overhauser.com

Jason L. Fulk
HOOVER HULL LLP
jfulk@hooverhull.com

Kandi Kilkelly Hidde
BINGHAM MCHALE LLP
khidde@binghammchale.com

John T L Koenig
BARNES & THORNBURG LLP
jkoenig@btlaw.com

Briana Lynn Kovac
BINGHAM MCHALE LLP
bkovac@binghammchale.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES
poverhauser@overhauser.com

Rafael A. Sanchez
BINGHAM MCHALE LLP
rsanchez@binghammchale.com

Dennis Scott Schell
OVERHAUSER LAW OFFICE
dschell@overhauser.com

Stephen Lewis Vaughan
INDIANO VAUGHAN LLP
steve@iplawindiana.com